UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE BROOKS, | No. 2:21-cv-00156-DAD-JDP |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DISMISSING PLAINTIFF'S UNRUH ACT CLAIM |
| TAPESTRY, INC., | |
| Defendant. | (Doc. No. 37) |

This matter is before the court on the motion to dismiss filed by defendant on December 16, 2022. (Doc. No. 37.) On February 9, 2023, defendant's motion was taken under submission on the papers. (Doc. No. 41.) For the reasons explained below, the court will deny defendant's motion to dismiss.

**BACKGROUND**

On January 26, 2021, plaintiff Valerie Brooks filed the complaint initiating this disability discrimination action against defendant Tapestry, Inc., d/b/a/ Kate Spade. (Doc. No. 1.) On December 16, 2021, plaintiff filed the operative first amended complaint ("FAC"), in which she asserted a claim under the Americans with Disabilities Act ("ADA") and a claim under California's Unruh Civil Rights Act ("the Unruh Act"). (Doc. No. 36.)

Plaintiff alleges the following in her FAC. Plaintiff is a visually impaired and legally blind individual residing in Sacramento, California. (*Id.* at ¶¶ 1, 4.) In order to read website

content using her computer, plaintiff requires screen-reading software, which vocalizes the visual information found on a computer screen. (*Id.* at ¶¶ 1, 16.) For screen-reading software to function, the information on a website must be capable of being rendered into text. (*Id.* at ¶ 18.) The World Wide Web Consortium, an international website standards organization, published Web Content Accessibility Guidelines to provide guidance on how to make websites accessible to blind and visually impaired individuals who use screen-reading software programs. (*Id.* at ¶ 19.)

Defendant owns, leases, or operates brick-and-mortar retail stores throughout the United States, including in California, and provides goods and services to the public through its physical stores and its website (www.katespade.com) (the "Website"). (*Id.* at ¶¶ 5, 22.) The Website offers consumers access to the same goods and services offered at defendant's physical locations. (*Id.* at ¶ 22.) For example, the Website allows consumers to "purchase goods sold in defendant's stores, purchase goods online for in-store pickup, find the nearest store location, access discounts and special offers received on the website" that are redeemable in defendant's physical stores, and arrange for in-store appointments. (*Id.* at ¶¶ 5, 8, 22.) In addition, goods purchased on the Website can be returned in person at defendant's physical stores. (*Id.* at ¶¶ 5, 22.)

Using her screen-reader software, plaintiff visited the Website to purchase apparel and arrange for in-store pickup. (*Id.* at ¶ 24.) Plaintiff alleges that she was unable to accomplish her purpose of purchasing apparel from defendant due to multiple accessibility barriers she encountered on the Website. (*Id.* at ¶ 25.) Specifically, plaintiff alleges that she could not "skip to the main content of the website because the skip to main content does not receive keyboard focus," which "forced [her] to expend an inordinate amount of time to apprise herself of the content of the website as compared to sighted consumers." (*Id.*) Plaintiff also alleges that the Website's code does not provide proper alternative text for its links, i.e., text that describes the content provided by those links. (*Id.*) For example, plaintiff alleges that she was unable to determine what specific goods were available for purchase because the code in the products links did not include alternative text, and thus plaintiff's screen reader read aloud the only text provided, saying "link" or "product link," without any identification or specification as to the product offered for purchase through that link. (*Id.*) In addition, plaintiff alleges that she could

not orient herself on the Website because it was not coded to communicate the current page to users of screen-reader software, like plaintiff. (*Id.*) Plaintiff asserts that if defendant had sufficiently coded its website to interact with screen-reader programs, she would have been able to complete an order online for apparel and arrange for in-store pickup. (*Id.* at ¶ 26.)

Plaintiff contends that "[d]ue to the inaccessibility of the Defendant's website, blind and visually impaired customers such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities and services Defendant offers to the public on its website." (*Id.* at ¶ 32.) According to plaintiff, "[d]efendant's denial of full and equal access to its website, and therefore denial of its products and services offered thereby and in conjunction with its physical locations, is a violation of Plaintiff's rights" under the ADA and the Unruh Act. (*Id.* at ¶ 2.)

Plaintiff brings this putative class action lawsuit on behalf of a nationwide class of "all legally blind individuals who have attempted to access Defendant's website by the use of a screen reading software during the applicable limitations period up to and including final judgment in this action." (*Id.* at ¶ 44.) On behalf of herself and the putative class, plaintiff seeks permanent injunctive relief "to cause a change in defendant's corporate policies, practices, and procedures so that defendant's website will become and remain accessible to plaintiff and other blind and visually impaired consumers," specifically by requiring defendant to comply with the Web Content Accessibility Guidelines in the development and operation of its website. (*Id.* at ¶¶ 3, 39.) Plaintiff also seeks statutory damages under the Unruh Act on behalf of a California subclass. (*Id.* at ¶¶ 44, 66.)

On December 16, 2022, defendant filed the pending motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 37.) Defendant also filed a request for judicial notice of documents reflecting plaintiff's extensive ADA litigation history and demonstrating plaintiff's status as a serial ADA litigant. (Doc. No. 37-4.) On December 30, 2022, plaintiff filed an opposition to the pending motion to dismiss, and on January 9, 2023, defendant filed its reply thereto. (Doc. Nos. 38, 39.)

/////

/////

## LEGAL STANDARDS

**A.     Rule 12(b)(1) – Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction over civil actions." *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 443 F. Supp. 3d 1152, 1156 (E.D. Cal. 2020) (citing *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994)), *aff'd*, 997 F.3d 848 (9th Cir. 2021). Federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). Subject matter jurisdiction is required; it cannot be forfeited or waived. *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156. Indeed, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may "challenge a federal court's jurisdiction over the subject matter of the complaint." *Nat'l Photo Grp., LLC v. Allvoices, Inc.*, No. 3:13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24, 2014). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). A party making a facial attack does not submit supporting evidence with the motion because jurisdiction is challenged based solely on the pleadings. *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156; *see also Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1084 (N.D. Cal. 2019) ("[C]ourts do not consider evidence outside the pleadings when deciding a facial attack.") (citation omitted). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The court need not, however, assume the truth of legal conclusions cast in the form of factual allegations. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

1    A challenge to Article III standing is appropriately raised in a motion to dismiss brought
2    pursuant to Rule 12(b)(1) because Article III standing is a jurisdictional issue, "deriving from the
3    requirement of a case or controversy under Article III." *Cole v. Oroville Union High Sch. Dist.*,
4    228 F.3d 1092, 1098 (9th Cir. 2000) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs.
5    (TOC), Inc.*, 528 U.S. 167, 180 (2002)).

6    "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the
7    threshold requirement imposed by Article III of the Constitution by alleging an actual case or
8    controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To satisfy the case or
9    controversy requirement, a plaintiff must show that he has suffered an injury-in-fact that is
10   concrete and particularized; that the injury is traceable to the challenged action of the defendant;
11   and that the injury is likely to be redressed by a favorable decision. *See Lujan v. Defenders of
12   Wildlife*, 504 U.S. 555, 560–61 (1992). "To confer standing, an injury in fact must be concrete,
13   particularized, and actual or imminent, not hypothetical." *Langer v. Kiser*, — F.4th —, 2023 WL
14   353215 at *4 (9th Cir. 2023) (citing *Lujan*, 504 U.S. at 561).

15   **B.    Rule 12(b)(6) – Failure to State a Claim**

16   The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal
17   sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.
18   1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of
19   sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901
20   F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to
21   relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A
22   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
23   the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.
24   Iqbal*, 556 U.S. 662, 678 (2009).

25   In determining whether a complaint states a claim on which relief may be granted, the
26   court accepts as true the allegations in the complaint and construes the allegations in the light
27   most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.
28   United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, in this context as well the court

need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## ANALYSIS

In its pending motion, defendant first argues that plaintiff's FAC should be dismissed because this court lacks subject matter jurisdiction over plaintiff's ADA claim due to plaintiff's failure to adequately allege standing under Article III and the ADA. (Doc. No. 37-1 at 6.) Defendant next argues that plaintiff has failed to state cognizable claims under the ADA and the Unruh Act because "the FAC does not sufficiently allege that any of the purported barriers on the website impeded her from accessing the goods and services offered at defendant's retail stores." (*Id.*) The court will address each argument in turn.

**A.     Whether Plaintiff has Sufficiently Alleged Standing under Article III and the ADA**

The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

6

"[T]o establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, [a plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (footnote and citation omitted). "[A]n ADA plaintiff can establish standing to sue for injunctive relief either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." *Id.* at 944. "Under the ADA, when a disabled person encounters an accessibility barrier violating its provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way . . . [r]ather, the barrier need only interfere with the plaintiff's 'full and equal enjoyment' of the facility." *Id.* at 947 (quoting 42 U.S.C. § 12182(a)) (citing *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 n.4 (9th Cir. 2008) (stating that the ADA "does not limit its antidiscrimination mandate to barriers that completely prohibit access")). "[W]hen an ADA plaintiff has suffered an injury-in-fact by encountering a barrier that deprives [her] of full and equal enjoyment of the facility due to [her] particular disability, [s]he has standing to sue for injunctive relief as to that barrier and other barriers related to his disability." *Id.* at 944. Thus, once a plaintiff encounters such a barrier, she "has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so [s]he possesses standing under Article III." *Id.* at 947 (quoting *Doran*, 524 F.3d at 1042 n.5).

"For a website to cause cognizable injury under the ADA, there must be a 'nexus' between the website and a physical place of public accommodation." *Gomez v. Miersch*, No. 21-cv-08936-CRB, 2022 WL 1271009, at *1 (N.D. Cal. Apr. 28, 2022) (quoting *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019)). "[A] plaintiff who fails to allege any connection between the website barriers and a physical location does not have an ADA claim." *Langer v. Pep Boys Manny Moe & Jack of Cal.*, No. 4:20-cv-06015-DMR, 2021 WL 148237, at *5 (N.D. Cal. Jan. 15, 2021).

The Ninth Circuit's decision in *Robles* is the leading case in this circuit addressing the question of whether ADA claims can be based upon alleged accessibility barriers on websites. In *Robles*, the plaintiff was a blind individual who used screen-reading software to access the

website operated by the defendant, Domino's pizza company, and he allegedly encountered accessibility barriers when he tried to order customized pizzas from a nearby Domino's restaurant using the website. 913 F.3d at 902. The Domino's website and mobile app "allow[ed] customers to order pizzas and other products for at-home delivery or in-store pickup, and receive exclusive discounts." *Id.* The Ninth Circuit described the "nexus between Domino's website and app and physical restaurants"—which it found to be "critical to [its] analysis"—noting that "[t]he alleged inaccessibility of Domino's website and app impedes access to the goods and services of its physical pizza franchises" and "customers use the website and app to locate a nearby Domino's restaurant and order pizzas for at-home delivery or in-store pickup." *Id.* at 905. Thus, the Ninth Circuit concluded "that the ADA applies to Domino's website and app, which connect customers to the goods and services of Domino's physical restaurants," noting that the website and app "facilitate access to the goods and services" of the restaurant and are "two of the primary (and heavily advertised) means of ordering Domino's products to be picked up at or delivered from" the restaurant. *Id.* at 905–906.[1]

Here, in its motion to dismiss, defendant argues that because plaintiff has not sufficiently alleged a nexus between its website and its retail stores, plaintiff has "failed to allege an injury-in-fact or likelihood of future harm and lacks Article III standing to bring her ADA claim." Doc. No. 37-1 at 6.) The court disagrees. Defendant focuses on plaintiff's ADA litigation history, as

---

[1] The Ninth Circuit explained that:

> the ADA mandates that places of public accommodation, like Domino's, provide auxiliary aids and services to make visual materials available to individuals who are blind. *See* [28 C.F.R.] § 36.303. This requirement applies to Domino's website and app, even though customers predominantly access them away from the physical restaurant: "The statute applies to the services *of* a place of public accommodation, not services *in* a place of public accommodation. To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute." *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) (emphasis in original) (internal citation omitted).

*Robles*, 913 F.3d at 905.

8

reflected in the documents that it requests be judicially noticed (Doc. No. 37-4), and defendant emphasizes the absence of allegations in the FAC regarding what specific apparel product plaintiff sought to purchase for in-store pickup through the Website and which specific retail location plaintiff intended to visit. (Doc. No. 37-1 at 7–8, 14–18.) Defendant's focus in this regard is misplaced. The Ninth Circuit has "instructed district courts not to question an ADA plaintiff's standing simply because they file numerous ADA lawsuits or are an ADA tester." *Langer*, 2023 WL 353215 at \*9. Accordingly, the court will deny defendant's request for judicial notice because the documents that defendants request be judicially noticed are irrelevant to resolution of the pending motion. Defendant is correct that several of plaintiff's prior ADA lawsuits have been dismissed due to her failure to sufficiently allege a nexus between the defendant's website and its physical place of public accommodation in those cases.[2] But in those lawsuits, plaintiff had not alleged that she attempted to order goods or services on the defendant's website for in-store pickup but was unable to do so due to accessibility barriers she encountered on the website. In contrast, as plaintiff notes in her opposition to the pending motion (Doc. No. 38 at 18–19), in this action, plaintiff specifically alleges that she tried to order apparel online from defendant's website for in-store pickup at defendant's retail store, but she was unable to do so due to the accessibility barriers she encountered on the website. (*See* Doc. No. 36 at ¶¶ 24–26.) Moreover, because the accessibility barriers on the Website allegedly made it impossible for

---

[2] *See Brooks v. Lovisa Am., LLC*, No. 22-cv-02493-TLN-KJN, 2022 WL 4387979, at \*4–5 (E.D. Cal. Sept. 22, 2022) (dismissing the plaintiff's ADA claim due to lack of standing because "plaintiff's complaint is devoid of any specific allegation that the Website is integrated with Defendant's physical locations in any particular way," such as an allegation "that she tried to order items from the Website for pickup at one of Defendant's stores but was unable to do so"); *Brooks v. Lola & Soto Bus. Grp., Inc.*, No. 2:21-cv-00158-TLN-DB, 2022 WL 616798, at \*1, \*7 (E.D. Cal. Mar. 2, 2022) (dismissing an ADA claim where the plaintiff had alleged only that she "was unable to find the location and hours of operation of Defendant's store on its website, preventing Plaintiff from visiting the location to purchase products and/or services" and did "not allege that she tried to order clothes from the Website for pickup at Defendant's shop but was unable to do so"); *Brooks v. See's Candies, Inc.*, No. 2:20-cv-01236-MCE-DB, 2021 WL 3602153, at \*3 (E.D. Cal. Aug. 13, 2021) (dismissing an ADA claim where the plaintiff had alleged only that she "was unable to find the location and hours of operation of Defendant's locations on its website, [thereby] preventing [her] from visiting the locations to view and purchase products and/or services" and did "not allege she tried to order candy from the website for pickup at a See's shop but was unable to do so").

plaintiff to identify which products were being offered for sale (let alone select one for purchase), and because consumers are not prompted to select a specific store pickup location until after products are selected for purchase (*see* Doc. No. 38 at 20), the court is not persuaded by defendant's argument that plaintiff should be required to specify in her FAC which particular apparel product she sought to purchase and which specific retail location she intended to visit to pick up that product. (Doc. No. 37-1 at 16–18.)

In its reply brief, defendant focuses on plaintiff's failure to allege "any physical location [she] intended to but was unable to access or was deterred from accessing as a result of her experience on the website." (Doc. No. 39 at 10.) According to defendant, plaintiff lacks standing to bring her ADA claim because she failed "to adequately allege how [her] inability to use the in-store pickup feature on the Website impeded her from browsing and purchasing apparel offered at a physical store." (*Id.* at 11.) In support of its position, defendant cites to a footnote in *Robles*, in which the Ninth Circuit stated that it "need not decide whether the ADA covers the websites or apps of a physical place of public accommodation where their inaccessibility does not impede access to the goods and services of a physical location." (*Id.* at 11–12) (quoting *Robles*, 913 F.3d at 905, n.6). Under defendant's interpretation of this footnote, if a plaintiff can still access a defendant's physical location (and thus the goods and services offered therein), then any accessibility barriers on the defendant's website are irrelevant and not covered by the ADA. Defendant essentially argues that plaintiff has failed to allege "that the Website operates as an indispensable gateway to defendant's retail locations," because plaintiff does not allege that she was impeded from visiting defendant's physical retail store to browse and purchase products in person. (*Id.* at 12.) The court does not agree with this narrow and unsupported interpretation of the Ninth Circuit's decision in *Robles*, which did not mention, let alone focus on, whether the plaintiff in that case was impeded from simply going to the Domino's restaurant and ordering a pizza in person. Although the Ninth Circuit in *Robles* noted that the Domino's website and app were heavily advertised and the primary means for ordering pizza, the court did not hold that a defendant's website must be an indispensable gateway and the sole means of access to the goods and services offered at the defendant's physical location. Indeed, "no court has held that under

the nexus theory a plaintiff has a cognizable claim only if the challenged service prevents physical access to a public accommodation." *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953–54 (N.D. Cal. 2006) (noting that the purpose of the ADA "is broader than mere physical access—seeking to bar actions or omissions which impair a disabled person's 'full enjoyment' of services or goods of a covered accommodation") (quoting 42 U.S.C. § 12182(a)); *see also Erasmus v. Charles W. Perry, M.D., Inc.*, No. 2:21-cv-00915-WBS-KJN, 2021 WL 4429462, at *5 (E.D. Cal. Sept. 27, 2021) (denying a motion to dismiss an ADA claim and noting that "[n]owhere do Title III or its implementing regulations state that an inaccessible feature of a public accommodation must *prevent* an individual from accessing the accommodation's good or services for the ADA's protections to apply").

Furthermore, unlike the cases relied upon by defendant in which the plaintiffs had not alleged that they attempted to purchase goods for in-store pickup but were unable to do so due to accessibility barriers encountered on the defendants' websites, here plaintiff has alleged the specific barriers she encountered on the Website that impeded her ability to purchase apparel for in-store pickup. Thus, the court finds that the allegations of plaintiff's FAC sufficiently state a nexus between defendant's website and its retail locations. *See Reed v. CVS Pharmacy, Inc.*, No. 17-cv-3877-MWF-SK, 2017 WL 4457508, at *3 (C.D. Cal. Oct. 3, 2017) (concluding that the plaintiff had sufficiently alleged that the barriers she countered were related to CVS's physical space because she "pleaded that she was unable to browse CVS' products on the mobile app, meaning that unlike sighted customers she was unable to determine in advance whether a particular location offered the product or service she sought"); *Nat'l Fed'n of the Blind*, 452 F. Supp. 2d at 953–54 (declining to dismiss the plaintiff's ADA claim because the plaintiff had alleged that Target's website allowed customers to purchase items available in Target's stores, including allowing customers to order photo prints online for pick-up in store, and thus the

/////

/////

/////

/////

plaintiff had adequately alleged that "the inaccessibility of Target.com impedes the full and equal enjoyment of goods and services offered in Target stores").[3]

Accordingly, defendant's motion to dismiss under Rule 12(b)(1) will be denied.

**B.      Whether Plaintiff has Stated a Cognizable ADA Claim**

Defendant's motion to dismiss plaintiff's ADA claim under 12(b)(6) is based upon the same arguments it advanced with regard to plaintiff's purported failure to allege a sufficient nexus between the Website and defendant's retail locations. (*See* Doc. No. 37-1 at 21) ("[T]he court should dismiss plaintiff's ADA claim based on her failure to adequately plead a nexus between the Website and denial of access to a brick-and-mortar store."). That is, defendant does not challenge other requisite elements of an ADA claim: that plaintiff has a covered disability and that defendant's stores are places of public accommodation. *See Arroyo v. Baseline Enter. LLC*, No. 20-56151, 2022 WL 385530, at *1 (9th Cir. Feb. 8, 2022).[4]

For the same reasons as explained above, the court finds that plaintiff has adequately alleged a nexus connecting defendant's website with its retail locations. Most notably, plaintiff has alleged that customers can order products on the Website for in-store pickup, which plaintiff tried but was unable to accomplish due to the accessibility barriers she encountered. Plaintiff also alleges several other features of the Website that relate to its retail locations and connect customers to the goods and services offered in store. For example, plaintiff also alleges that the Website allows consumers to arrange for in-store appointments and "access discounts and special offers received on the website" that are redeemable in defendant's physical stores, and goods purchases on the Website can be returned in person at defendant's physical stores. (*See* Doc. No. 36 at ¶¶ 5, 8, 22.)

/////

---

[3] Although the district courts' decisions in *Reed* and *National Federation of the Blind* pre-date the Ninth Circuit's decision in *Robles*, those decisions were cited favorably by the court in *Robles*, which stated that it agreed with "the many other district courts that have confronted this issue in similar contexts." *Robles*, 913 F.3d at 905, n.7.

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1       Accordingly, the court will deny defendant's motion to dismiss plaintiff's ADA claim

2 under Rule 12(b)(6).

3 **C.     Plaintiff's Unruh Act Claim**

4       Defendant also moves to dismiss plaintiff's Unruh Act claim, which defendant argues

5 necessarily fails because her ADA claim fails. (Doc. Nos. 37-1 at 21–22; 39 at 16.) The court

6 will not address the parties' respective arguments with regard to plaintiff's Unruh Act claim,

7 however, because the court will decline to exercise supplement jurisdiction over plaintiff's Unruh

8 Act claim in this case.

9       Declining to exercise supplemental jurisdiction over plaintiff's Unruh Act claim here,

10 where the court has not yet determined the merits of plaintiff's ADA claim, is appropriate and

11 consistent with recent Ninth Circuit authority addressing this issue. *See* 28 U.S.C. § 1367(c)(4)

12 ("The district courts may decline to exercise supplemental jurisdiction over a claim [] if . . . in

13 exceptional circumstances, there are other compelling reasons for declining jurisdiction.") In

14 particular, in *Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir. 2021), the Ninth Circuit described in detail

15 the "backdrop of recent changes in California law governing Unruh Act claims," and the fact that

16 the California Legislature "imposed additional procedural requirements on 'construction-related

17 accessibility claims' in order to address what it believed was continued abuse by 'high-frequency

18 litigant[s].'" *Arroyo*, 19 F.4th at 1207 (quoting Cal. Civ. Proc. Code § 425.55(a)(2), (b)).[5] The

19 court explained that because "the significant expense and burden of California's newly imposed

---

[5] The heightened requirements imposed on "construction-related accessibility claims" is not restricted solely to physical structures; it applies to website accessibility claims as well. *See Alonzo v. Kam Sang Co., Inc.*, No. 21-cv-8648-GW-AS, 2022 WL 3636165, at *2 (C.D. Cal. Mar. 22, 2022) (declining to exercise supplemental jurisdiction over an Unruh Act claim brought by a blind plaintiff alleging website accessibility barriers and noting that "an intangible website that makes a public accommodation more accessible is governed by a "construction-related accessibility standard") (quoting *Robles*, 913 F.3d at 904); *see also Mason v. Sprout Yangban, LLC*, No. 2:22-cv-08580-SPG-SK, 2022 WL 18396014, at *4 (C.D. Cal. Dec. 16, 2022) (declining to exercise supplemental jurisdiction over an Unruh Act claim brought by a plaintiff who sued the defendant for failing to accommodate visually impaired persons on its website). "There is no language in [California Civil Procedure Code §] 425.50 limiting the provision to apply to only 'physical' barriers." *Cota v. Sushi Ota Inc.*, No. 20-cv-01721-H-BLM, 2021 WL 108640, at *3 (S.D. Cal. Jan. 11, 2021) (declining to exercise supplemental jurisdiction over an Unruh Act claim).

1    rules . . . can be avoided by pairing the Unruh Act claim with a parallel federal ADA claim and
2    then filing the suit in federal court," there has been a sharp increase in the number of ADA
3    lawsuits filed in federal courts in California. *Id.* (noting that the percentage of civil actions filed
4    in the Central District of California brought under the ADA had increased in 2018 and 2019 from
5    3% to 22% of all civil actions). The court in *Arroyo* concluded that "the procedural strictures that
6    California put in place have been rendered largely toothless, because they can now be readily
7    evaded." *Id.* at 1213. The court further concluded that these circumstances are "exceptional." *Id.*
8    Thus, in *Arroyo*, the Ninth Circuit "ha[d] little difficulty concluding that the district court did not
9    abuse its discretion in concluding that the situation presented here involves 'exceptional
10   circumstances' within the meaning of § 1367(c)(4)." *Id.* at 1214.

11          Indeed, district courts addressing this issue post-*Arroyo* have declined to exercise
12   supplemental jurisdiction over Unruh Act claims where the litigation was not in its very late
13   stages and where those courts had not yet addressed or ruled on the merits of the ADA claim. *See*
14   *Garcia v. Maciel*, No. 21-cv-03743-JCS, 2022 WL 395316, at *5 (N.D. Cal. Feb. 9, 2022)
15   (collecting cases); *see also Vo v. Choi*, 49 F.4th 1167, 1172 (9th Cir. 2022) (affirming a district
16   court's order declining to exercise supplemental jurisdiction over an Unruh Act claim because
17   "[t]he district court here declined supplemental jurisdiction over [plaintiff's] Unruh Act claim
18   well before it ruled on the merits of the ADA claim"); *cf. Whitaker v. Reeder*, No. 20-55358,
19   2022 WL 2115045, at *1 (9th Cir. June 13, 2022) (reversing the district court's decision to
20   decline the exercise of supplemental jurisdiction over the plaintiff's Unruh claim because it did
21   not do so "until it had ruled on the merits of the ADA claim" and "[g]iven this timing, the values
22   of judicial economy and convenience favor retaining jurisdiction over the claim, and the concerns
23   of comity could not be properly addressed at the late stage of litigation").

24          For these reasons, and consistent with the Ninth Circuit's decision in *Arroyo*, the court
25   declines to exercise supplemental jurisdiction over plaintiff's Unruh Act claim in this action. *See*
26   *Garcia*, 2022 WL 395316, at *5 ("Under the circumstances of this case, which has not progressed
27   beyond threshold questions of standing and jurisdiction, the strong comity concerns identified by
28   the Ninth Circuit in *Arroyo* outweigh any countervailing considerations of economy and

efficiency that might be adversely affected by requiring [plaintiff] to refile his Unruh Act claim in state court."). Therefore, the court will dismiss plaintiff's Unruh Act claim, without prejudice to the refiling of that claim in state court. As a result of this determination, the court need not address the parties' arguments with regard to whether plaintiff has sufficiently stated a cognizable Unruh Act claim.

**CONCLUSION**

For the reasons set forth above,

1. Defendant's request for judicial notice (Doc. No. 37-4) is denied;
2. Defendant's motion to dismiss (Doc. No. 37) is denied;
3. Pursuant to 28 U.S.C. § 1367(c)(4), the court declines to exercise supplemental jurisdiction over plaintiff's Unruh Act claim;
4. Plaintiff's Unruh Act claims is dismissed without prejudice to plaintiff refiling that claim in state court; and
5. Within fourteen (14) days from the date of entry of this order, the parties shall meet and confer regarding further scheduling of this case and shall file a joint status report to inform the court of their proposal for further case scheduling.

IT IS SO ORDERED.

Dated: **February 15, 2023**                           /s/ Dale A. Drozd
                                                                        UNITED STATES DISTRICT JUDGE